UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| VERSUS | * | NO. 08-281 |
| ELBERT JONES | * | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendant's Motion to Suppress Statements and Evidence. For the reasons that follow, the defendant's motion is DENIED.

Background

On or about November 6, 2008, Agent Dennis Bush, a Task Force Agent with the Drug Enforcement Administration, received information from a confidential source that the defendant was selling crack cocaine from the defendant's residence at 2775 Bay Street in New Orleans. The informant said that individuals who wanted to buy crack would call the defendant and then would later meet him at the Bay Street residence to buy crack outside of his house.

Bush, along with NOPD Sergeant Kevin Imbraguglio and Detectives Landries Jackson and David Ogazalek investigated the matter at 11:35 a.m., including surveillance of the Bay Street

1

residence on November 6, 2008. During surveillance, the detectives observed a female inside the residence. At about 12:35 p.m. Detective Jackson, who was in an unmarked vehicle nearby, observed a black male, later identified as Chester Blunt(a cocaine addict and convicted felon), arrive and park in front of the Bay Street residence in a white vehicle. Shortly thereafter, another black male, later identified as the defendant, arrived at the residence in a red Ford sedan. The defendant exited the sedan, walked over to the white truck, and began talking to Blunt. Blunt gave the defendant something, apparently an unknown amount of money. The defendant took the money, walked inside the Bay Street residence, and came back out a few moments later. The defendant walked to the white truck and handed something to Blunt. Blunt and the defendant then separately drove away from the residence in their vehicles.

Detective Jackson and NOPD officers Charles Love and Bronson Gettridge followed Blunt; they stopped his vehicle at the intersection of Piedmont Drive and Humanity Street. Blunt threw a sandwich bag, which Jackson says he observed to contain two white rock-like objects, out the driver side window onto a grassy area near the location of the stop.[1] The officers recovered the bag, which contained white residue, but were unable to find the white rock-like objects in the grass. They arrested Blunt for possession

---

[1] Detective Jackson's testimony, that even from a distance he could see in the bag two rock-like items smaller than the size of a fingernail which were crack rocks, is difficult to accept.

of cocaine.

Other officers had followed the defendant, and stopped him at the intersection of Franklin Avenue and Sage Street. They placed the defendant under arrest for distribution of cocaine, and a search incident to the arrest yielded some $700 in cash from the defendant's pants pocket. When asked where the defendant had been, he told the officers that he was just leaving his residence in the 3300 block of Allen Street (even though the officers had just seen him depart from the Bay Street residence). The police took defendant's keys to the Bay Street residence.

Detective Jackson left to complete paperwork for a warrant to search the Bay Street residence. He took the application for a warrant, with his affidavit describing his observations of the events of that day, to the Magistrate Commissioner. The Commissioner had taken the bench for the day, so Detective Jackson waited until he could present him with the application. The Commissioner reviewed the application and signed the warrant at 4:08 p.m.

Meanwhile, officers returned to the Bay Street residence to secure it while waiting for the signed warrant. They entered the residence using the defendant's keys. The government states that inside, officers encountered Linda Johnson, the defendant's girlfriend. The government represents that the officers advised Ms. Johnson of her Miranda rights and asked her if there were any

3

guns or drugs in the house.  The government maintains that Ms. Johnson voluntarily directed the officers to a kitchen cabinet containing crack cocaine, and to a bedroom closet containing two firearms.  At no point, the government argues, was Ms. Johnson threatened or coerced.[2]

The defendant's account of the events at the Bay Street residence differs substantially, but without credible supporting evidence.  He contends that officers found Ms. Johnson sleeping in the residence,[3] and awakened her by pointing semi-automatic weapons at her face.  He claims officers, without first advising her of her rights, shouted at her: "Where are the guns?"  Then, he asserts, the officers threatened Ms. Johnson by telling her that she was in jeopardy of losing her children and that she must cooperate in order to protect her children. The defendant says that Ms. Johnson took officers to a closet in a back room of the house, and then, without a warrant, the officers began to search the rest of Johnson's house.  During the search, defendant submits, officers found drugs and drug paraphernalia.

After obtaining the search warrant, at approximately 4:20 p.m., the police then did a full search of the Bay Street

---

[2] She wrote a statement in her own handwriting that she voluntarily directed the police to the guns and drugs in the residence without being forced to do so and told the police the drugs and guns were "for Elbert Jones."

[3] This part of the story is even contradicted by witness Chester Blunt himself.

4

residence.  The full search yielded crack cocaine and digital scales from a kitchen cabinet, glass coffee pots with suspected cocaine residue from the kitchen counter-tops, baking soda and sandwich bags from a separate kitchen cabinet, and a portable burner from the kitchen counter-top.  Officers also seized documents addressed to the defendant at the Bay Street residence, clothes, photos, keys, two guns, and cash.

The defendant was taken to the DEA office, where Task Force Agent Justin Moran advised the defendant of his Miranda rights. The defendant stated that he understood his rights and agreed to make a statement.  He signed a Statement of Rights and Waiver of Rights form,[4] and then gave a recorded statement.  The defendant admitted that the crack cocaine and the guns inside the Bay Street residence were his.  He added that he routinely obtained approximately nine ounces of powder cocaine from a source in Houston and that he would convert, or "cook," the powder into crack cocaine, which he would then sell to users.  He also stated that he had just purchased the handgun from an acquaintance for $50, and that he was holding the assault rifle for a friend who was in jail.

The defendant was charged with manufacturing crack cocaine, possessing with intent to distribute crack cocaine, and being a felon in possession of a firearm.

---

[4]Among the defendant's most incredible moments of testimony was the wholly incoherent story he told about how and when the Statement was or was not signed by him.

The defendant contends the search warrant application was not supported by probable cause and the "good faith" exception should not apply; that Ms. Johnson did not give her consent to search the Bay Street residence because she was in custody and was threatened and coerced; and that no exigent circumstances existed to justify entry into the residence prior to obtaining the warrant.

The government responds that probable cause did exist to support the warrant because, under the totality of the circumstances, the officers' observations along with the confidential tip created a reasonable belief that the fruits of criminal activity would be found in the Bay Street residence.[5] Additionally, even if probable cause did not support the issuance of the warrant, the evidence should not be suppressed because the officers acted in "good faith". The government also argues that Ms. Johnson voluntarily consented to the search of the residence, and exigent circumstances existed for them to enter and secure the residence. Alternatively, the government maintains that even if the initial entry was invalid, the search pursuant to the warrant was independent of the initial entry and all items discovered during the initial entry would have been discovered while executing the search warrant.

## Law and Application

---

[5]The Court agrees, in spite of its concerns about the testimony of Detective Jackson regarding what he claims he could see in the clear plastic bag that was thrown from Blunt's vehicle.

I.

The Fifth Circuit instructs that when a defendant moves to suppress evidence on the ground that the search warrant was not supported by probable cause, "principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of evidence under the good-faith exception to the exclusionary rule will resolve the matter."[6] U.S. v. Flanders, 468 F.3d 269, 270 (5th Cir. 2006).

The threshold issue is whether the officers acted in good faith in executing the warrant.

The "good faith" exception to the exclusionary rule applies unless: (1) "the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant"; (3) "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) "the warrant was facially invalid." The defendant contends that third factor was violated in

---

[6] The court went on to state that courts should deviate from this scheme and proceed directly to the probable cause inquiry only when "the resolution of a novel question of law is necessary to guide future action by law enforcement officers and magistrates." Id. This case does not present a novel issue of law.

7

this case; that the warrant affidavit was so lacking in indicia of probable cause because Officer Jackson's belief in the existence of probable cause was entirely unreasonable.

The Court finds that the warrant affidavit was sufficiently detailed to support a belief that probable cause existed. The defendant focuses on the informant's tip, arguing that it did not contain sufficient information as to how the informant had the information, and that it was likely based (speculating) on just a "casual rumor." The government, however, points out that not only does the affidavit refer to the confidential source's information, but it details the officers' observations that support a belief that a drug transaction occurred and that evidence would be found in the Bays Street residence. The officers specially detailed the defendant receiving money from Blunt, going back to the house, and returning and handing something to Blunt. The officers later found a small bag that Blunt had thrown from his car containing crack cocaine residue. The affidavit notes that the defendant lied about where the defendant lived and was coming from, adding additional weighty support under the circumstances to the officers' belief that he was trying to prevent them from discovering further evidence of his drug transactions. The Court finds that, considering all these incidents, the affidavit was not so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. Therefore, the good faith exception to the exclusionary rule applies and the items seized pursuant to the

search warranted are admissible.

The defendant also challenges the entry of the residence prior to the warrant being issued, and insists that Ms. Johnson did not give her voluntary consent to the search. The Court need not rule on this argument, however, because the Court finds that the independent source doctrine applies (Ms. Johnson's handwritten statement contradicts defendant's claim). "In the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source." Murray v. U.S., 487 U.S. 533, 538-39 (1988). "So long as a later, lawful seizure is genuinely independent of an earlier, tainted one[,] . . . there is no reason why the independent source doctrine should not apply." Id. at 542. Here, the issuance of the warrant was completely separate from the entry into the residence. There was no reference in the affidavit to anything discovered by the officers during their initial entry. Therefore, the later search pursuant to the warrant was sufficiently separate to remove any potential taint from the initial entry, even if Detective Jackson's observations were possibly more flourish than fact. Id. This doctrine is predicated on the policy that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." Id. Because the Court finds that the independent source doctrine applies, the evidence discovered during the execution of the

warrant, regardless of whether it was also initially discovered during the initial entry, is admissible.

Accordingly, defendant's Motion to Suppress is DENIED.[7]

New Orleans, Louisiana, May 27, 2010.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] The defendant makes a conclusory statement in his motion that he was questioned by police officers after asserting his right to assistance of counsel, and that his statements to police were not voluntary. However, defendant provides no facts or details to support this assertion, and the government points out that the defendant signed a Statement of Rights and Waiver of Rights form, which advised him of his Miranda rights. Therefore, his motion to suppress his statements is also denied.